**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| DAVID MURPHY, derivatively on behalf of STRIDE, INC., | ) ) ) | |
| Plaintiffs, | ) | Case No. |
| v. | ) ) | |
| JAMES J. RHYU, AIDA M. ALVAREZ, STEVEN B. FINK, ROBERT E. KNOWLING, JR., ALLISON LAWRENCE, LIZA MCFADDEN, RALPH SMITH, JOSEPH A. VERBRUGGE, and DONNA BLACKMAN, | ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants, | ) ) | |
| -and- | ) ) | |
| STRIDE, INC., a Delaware Corporation, | ) ) | |
| Nominal Defendant. | ) ) | |

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

Plaintiff David Murphy ("Plaintiff"), derivatively on behalf of Stride, Inc. ("Stride" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties, gross mismanagement, waste of corporate assets, unjust enrichment, and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *MacMahon v. Stride, Inc., et al*. (E.D. Va. Civil Action No. 1:25-cv-02019) (the "Securities Action"); (iii) corporate governance documents available on the Company's website; and (iv) other publicly available information.

## **NATURE OF THE ACTION**

1.      This is a stockholder derivative action brought by Plaintiff, a stockholder of Stride, on behalf of the Company against the Defendants (as defined herein).  This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least October 22, 2024, to October 28, 2025 (the "Relevant Time Period").  During that time the Defendants caused or allowed Stride to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2.      Stride is a Virginia-based technology company that provides an educational platform to deliver online learning to students throughout the United States.  During the Relevant Time Period, Stride made representations to investors that it was "one of the nation's most successful technology-based education companies" and that its "[d]eep educational, regulatory, and policy expertise" across the United States allowed it to "leverage[e] capabilities and assets to address market failures or shortcomings."

3.      These statements were materially false and misleading because Stride was: (1) inflating enrollment numbers; (2) cutting staff costs beyond required statutory limits; (3) ignoring compliance requirements; and (4) losing existing and potential student enrollments.

4.      Through this action, Plaintiffs seek to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements, as well as the inadequate internal controls that allowed the misconduct to occur, in breach of their fiduciary duties to the Company.

## PARTIES

**A.    Plaintiff**

5.    Plaintiff is a current stockholder of Stride and has continuously held Stride stock during all times relevant hereto and is committed to retaining Stride shares through the pendency of this action to preserve his standing.  Plaintiff will adequately and fairly represent the interests of Stride and its stockholders in enforcing its rights.

**B.    Nominal Defendant**

6.    Nominal Defendant Stride is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 11720 Plaza America Dr, 9th Floor, Reston, Virginia 20190. Stride's common stock trades on the New York Stock Exchange ("NYSE") under the ticker "LRN."

**C.    Individual Defendants**

7.    Defendant James Rhyu has served as CEO and director of the Company since 2021. He is currently the Chairman of the Board.

8.    Defendant Aida M. Alvarez has been a director of the Company since 2017.

9.    Defendant Steven B. Fink has been a director of the Company since 2003.

10.    Defendant Robert E. Knowling, Jr. has been a director of the Company since 2018. Defendant Knowling resigned from the Board in April 2025 and re-elected to the Board in September 2025.

11.    Defendant Allison Lawrence has been a director of the Company since 2023.

12.    Defendant Liza McFadden has been a director of the Company since 2017.

13.    Defendant Ralph Smith has been a director of the Company since 2023.

14.    Defendant Joseph A. Verbrugge has been a director of the Company since 2022.

15.    Defendants Rhyu, Alvarez, Fink, Knowling, Lawrence, McFadden, Smith, and Verbrugge are herein referred to as "Director Defendants."

16.    Defendant Donna Blackman has served as the Company's Chief Financial Officer since 2022.

17.    Defendants Rhyu and Blackman are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

19.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.    Venue is proper in this court under 28 U.S.C. § 1391, because Stride is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.    Company Background

22.    Stride (formerly known as K12 Inc.) provides online and blended learning solutions for K–12, higher education, career learning, and enterprise markets. The company offers online

4

public and private schools, career training in fields like healthcare and technology, and professional development for businesses. These products and services are provided through two lines of revenue: General Education and Career Learning.

23. During the Relevant Time Period, Stride told investors that "[t]hese products and services, spanning curriculum, systems, instruction, and support services are designed to help learners of all ages reach their full potential through inspired teaching and personalized learning."

24. While making these promising statements Stride was actually: 1) inflating enrollment numbers by using "ghost students"; (2) cutting staffing costs by assigning teachers' caseloads above the required statutory limits; (3) disregarding compliance requirements, such as background checks and licensure laws for its employees, and disregarding federally-mandated special education services to students; (4) silencing whistleblowers who documented financial directives from Stride's management to hold up hiring and deny services to preserve profit margins; and (5) losing existing and potential enrollments.

**B.     Stride's False and Misleading Statements**

25. On October 22, 2024, the Company announced its financial results for the first quarter of 2025. On a call to discuss the results with analysts and investors, Defendant Rhyu stated: "We believe we can deliver meaningful products and services to millions of students and customers each year with the range of initiatives that we are currently in development."

26. Defendant Blackman added that "[f]amilies continue to seek out educational opportunities and Stride is filling a need in the market for virtual options."

27. Defendant Blackman further stated:

For the second quarter of fiscal year 2025, we are forecasting revenue in the range of $560 million to $580 million, adjusted operating income between $115 million and $125 million, and capital expenditures between $13 million and $15 million. For the full year, we expect revenue in the range of $2.225 billion to $2.3 billion;

adjusted operating income between $395 million and $425 million; capital expenditures between $60 million and $65 million and an effective tax rate between 24% and 26%.

28.     On January 28, 2025, Stride announced its financial results for the second quarter of 2025. On a call to discuss the results with analysts and investors, Defendant Rhyu told investors:

> that "for three consecutive years now, we have seen increasing growth in our business. And also, for three consecutive years, we see continued in-year strength in demand. The macro environment for our business is as strong as ever. And as long as we can continue to execute effectively, I believe we can benefit from these conditions."

29.     On April 29, 2025, Stride announced its financial results for the third quarter of 2025. On a call to discuss the results with analysts and investors, Defendant Blackman told investors:

> Given the continued strength of in-year enrollments and the margin improvements, we are raising . . . our full year revenue and AOI guidance, and we now expect revenue in the range of $2.370 billion to $2.385 billion, up from $2.320 billion to $2.355 billion last quarter. Adjusted operating income between $455 million and $465 million, up from $430 million and $450 million last quarter.

30.     On August 5, 2025, Stride announced its financial results for the fourth quarter and full year 2025. On a call to discuss the results with analysts and investors, Defendant Rhyu announced:

> The good news is that macro trends around our core business continue to be positive. Demand for school choice is growing, and our customers and potential customers continue to choose us in record numbers. Given where we are, less than 50% through our anticipated enrollment season, we can already see if current trends continue that we will once again achieve double-digit enrollment growth this fall. And we are continuing to invest in new products and services. This will both benefit our core business but also give us new market opportunities to pursue. For example, over the past year, our tutoring business hosted over 100,000 sessions. In this upcoming school year, we are going to offer dedicated tutoring for all second and third graders focused on the core skill of reading.

31.     Additionally, Defendant Blackman stated:

This year was another record year for Stride with continued strong revenue and profitability growth. And while it's still early in the enrollment season, given that historically August and September are our busiest months, we are on track for another year of strong growth in FY '26. And as we've done in the past, we'll wait until the first quarter earnings to provide formal enrollment guidance. However, I'd like to add a little color to the comments James made about our anticipated enrollment growth for the first quarter. Based on our latest data, we expect year-over-year enrollment growth to be in the range of 10% to 15% in the first quarter. It's still early in August, and we will need to continue to execute against what we believe is a strong market trend. A few additional notes for FY '26. Seasonality for next year should be in line with FY '25. SG&A as a percent of revenue should continue to decrease marginally, while CapEx as a percent of revenue is anticipated to be relatively flat. Stock-based compensation will increase slightly from this year, and interest expense and the tax rate should be in line with FY '25.

32.    During the same call, when asked about the termination by Gallup-McKinley

County Schools, Defendant Rhyu responded:

So let me try to unpack this here a little bit. When we encountered the difficulties with the Gallup-McKinley school district, we were uncertain about how those families were going to be able to continue in a program and -- period. Like we just -- we didn't have enough information sort of broadly whether it was going to be ours or theirs or whatever. And so we made a decision to offer those families a spot in a comparable private academy in New Mexico. And our view of it was that we were going to invest in those families irrespective of sort of whatever contractual outcome happened because it was important to us to make sure that we protected those families.

Our team did an amazing job in securing these contracts. And so those families now have, I'll say, a more secure home, if you will, in a similar environment, if you will, that they were previously in. But we did make an offer, and that would have been an investment on our part for these families. It also, by the way, ensured teachers that we employed in New Mexico were able to retain their jobs, which was also important to us, which we also made that decision at potentially investment on our part. Now it's all worked out. But we made that decision before we knew it was going to work out because it was the right thing to do for the families and for the teachers in that state. And we stood by them, and I think they're now standing by us.

But it was dicey. It was difficult. We were not sure that we were going to secure a new set of agreements. Shout out to the districts that signed up with us. I think they worked very quickly and diligently as well. So thank you to them. And I think we've all got the same goals in mind here, which is to ensure seamless education opportunities for those families. And that's -- we've been able to come together and provide that. And we're very grateful for that opportunity to serve those families.

33.    When asked if Stride could fill in the enrollment loss, Defendant Rhyu replied that:

We anticipate no hole to fill. And yes, you have the numbers directionally right. It would have been something probably less than 2% of the total that we would have, in theory, had at risk. But we feel pretty confident that New Mexico is a really strong demand state. We see a lot of demand in that state. We think we're going to continue to perform very well in that state, and we think that the families have really recognized us as the premier operator in that state.

34.    Defendant Blackman added that "[b]ased on our latest data, we expect year-over-year enrollment growth to be in the range of 10% to 15% in the first quarter."

35.    On October 28, 2025, the Company held a call with analysts and investors to discuss Stride's financial results for the first quarter of 2026. During that call, Defendant Rhyu told investors that Stride experienced "approximately 10,000 to 15,000 fewer enrollments" than it expected. He explained that:

Demand for our products and services remain strong. In fact, we believe industry demand and trends around online education continue to grow. We indicated in August that we believe we would grow enrollment between 10% to 15%. And while we achieved enrollment growth in that range, we still fell short of our internal expectations. While demand as indicated by application volumes remains healthy, overall growth was tempered. Well, what happened? Well, we made a couple of strategic decisions that we believe will pay dividends over the longer term, but limited our growth in the short term.

First, we invested in upgrading our learning and technology platforms with third-party industry-leading platforms. We continue to believe the investment is the right long-term decision to ensure we are deploying industry-leading technologies and systems. However, the implementations did not go as smoothly as we anticipated. We are actively engaged with our vendors to improve the situation. We heard from our customers that their engagement with these platforms detracted from their overall experience. This poor customer experience has resulted in some higher withdrawal rates and lower conversion rates than we expected.

Secondly, we wanted to focus on running high-quality programs. And in some instances, the best approach to achieve that is to limit enrollment growth while we improve our execution. We estimate that the combination of these factors resulted in approximately 10,000 to 15,000 fewer enrollments than we otherwise could have achieved. We also believe that these challenges will likely restrict our in-year enrollment growth. While demand continues to remain strong, we do not anticipate

the same in-year enrollment increases that we have seen over the past few years. So our outlook for this year compared to last year is a bit muted. However, our outlook for this business over the longer term remains bullish, and these investments should help us achieve our longer-term goals.

36.     Defendant Blackman also stated that:

We did not give guidance for the full year. We gave the guidance that we gave for the count date was 10% to 15% for the count date, we came in at 11.3%. But we do not anticipate that we will see the same level of in-year enrollment growth that we've seen over the past three years. So based upon that assumption, the 11.3% growth that we saw from October to October, we don't expect to see that same year-over-year increase by the end of the year.

37.     The foregoing statements were materially false and misleading, and failed to disclose materially adverse facts about the Company's business and operations. Specifically, Stride was: 1) inflating enrollment numbers by using "ghost students"; (2) cutting staffing costs by assigning teachers' caseloads above the required statutory limits; (3) disregarding compliance requirements, such as background checks and licensure laws for its employees, and disregarding federally-mandated special education services to students; (4) silencing whistleblowers who documented financial directives from Stride's management to hold up hiring and deny services to preserve profit margins; and (5) losing existing and potential enrollments.

**C.     The Truth is Revealed**

38.     On September 14, 2025, a report stated that the Gallup-McKinley County Schools Board of Education had filed a complaint against Stride, alleging fraud, deceptive trade practices, systemic violations of law, and intentional and tortious misconduct, including inflating enrollment numbers by retaining "ghost students" on rolls to secure state funding per student and ignoring compliance requirements, including background checks and licensure laws for its employees.

39.     On this news, the price of Stride's stock fell $18.60 per share, or 11.7%, to close at $139.76 per share on September 15, 2025.

40.     On October 28, 2025, Stride announced that "poor customer experience" had resulted in "higher withdrawal rates," "lower conversion rates," and had driven students away.

41.     Stride estimated the impact caused approximately 10,000-15,000 fewer enrollments and stated that, because of this, its outlook is "muted" compared to prior years.

42.     On this news, the price of Stride's stock dropped $83.48 per share, or more than 54%, to close at $70.05 per share on October 29, 2025.

**D.      Defendants' Misconduct Has and Continues to Harm the Company**

43.     As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

44.     Stride's reputation and goodwill have also been damaged by the Defendants' misconduct.

**E.      Stride Issues False and Misleading Proxy Statements**

45.     In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Time Period, including the Schedule 14A Proxy Statements issued on October 25, 2024 (the "2024 Proxy") and on October 24, 2025 (the "2025 Proxy") (collectively the "Proxies"), that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

46.     The Director Defendants drafted, approved, reviewed, and/or signed the Proxies before they were filed with the SEC and disseminated to Stride's stockholders. The Director Defendants negligently issued materially misleading statements in the Proxies. These allegations

are based solely on negligence, they are not based on any allegations of recklessness or knowing

conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud.

Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or

any allegation of fraud, scienter, or recklessness with regard to the allegations and related claims

concerning the Proxies.

47.    In support of re-electing themselves, the Director Defendants highlighted their

supposed oversight of the Company in the 2024 Proxy. The 2024 Proxy stated:

**Risk Oversight**

Our Board believes full and open communication with management is essential for effective enterprise risk management and oversight. Members of our Board discuss strategy and risks facing the Company with our CEO and our senior management at meetings of the Board, or when members of our Board seek to raise and focus on a particular area of risk, such as meeting state academic accountability standards at the schools we manage, ensuring the privacy of student information, compliance with state regulatory and reporting requirements, or information technology cybersecurity protections and preparedness. Because our CEO and Chair of the Board set the agenda for Board meetings, each functional division of the Company can identify and bring to our Board's or Board committees' attention risk-related topics that may require added focus, which have included: evolving state curriculum standards, student engagement and retention, education technology, legal and policy matters, information security and succession planning. Our CEO also periodically presents to our Board on the strategic, financial and operational issues facing the Company, which frequently includes a review of associated risks and opportunities.

Management is responsible for identifying, prioritizing, remediating and monitoring the day-to-day management of risks that the Company faces and applying the Company's disclosure controls and procedures, while our Board, as a whole and through its committees, is responsible for the oversight of enterprise risk management. In fiscal 2024, the Audit Committee continued to work directly with a major independent accounting firm to support the Company's internal audit function in risk management.

This combination provides us with the focus, scope, expertise, alignment and continuous attention necessary for effective risk management and disclosures. While our Board is ultimately responsible for risk oversight, three of its committees concentrate on specific risk areas:

The Audit Committee oversees financial reporting and internal controls, school and corporate compliance, cybersecurity and operations risk and discusses with management the Company's policies with respect to those matters. Our internal audit department prepares risk management reports that are provided to the Audit Committee on a quarterly basis, or as needed. The Audit Committee receives regular reports from management, including the Chief Information Security Officer, on our cybersecurity risks. In addition, management updates the Committee on any cybersecurity incidents it considers to be significant or potentially significant. The Audit Committee reports to the full Board regarding its activities, including those related to cybersecurity. In addition, the Audit Committee assists the Board in the oversight of legal risk management. A Legal Compliance and Ethics Committee (consisting of senior management members) maintains a Legal Compliance and Ethics Program, which includes a Chief Compliance Officer.

The Legal Compliance and Ethics Committee provides reports to the Audit Committee on the Company's legal risks and compliance-related matters in the schools we serve and at the corporate level. Our Compensation Committee assists our Board in fulfilling its oversight responsibilities with respect to the management of risks arising from our compensation policies and programs and retains outside compensation and legal experts for that purpose.

Finally, our Nominating and Corporate Governance Committee assists our Board in fulfilling its oversight responsibilities with respect to the management of risks associated with the organization, membership and structure, or design, of the Board, succession planning and corporate governance. The Board committees may retain independent counsel, experts or advisors as provided for in their charters, and the Board as a whole has access to such advisors and such other independent advisors that the Company retains or that the Board considers necessary to discharge its responsibilities, including in connection with risk oversight.

48.    In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the 2025 Proxy. The 2025 Proxy stated:

**Risk Oversight**

Our Board believes full and open communication with management is essential for effective enterprise risk management and oversight. Members of our Board discuss strategy and risks facing the Company with our CEO and our senior management at meetings of the Board, or when members of our Board seek to focus on a particular area of risk. Because our CEO and Executive Chair of the Board sets the agenda for Board meetings, in consultation with our Lead Independent Director, each functional division of the Company can identify and bring to our Board's or Board committees' attention risk-related topics that may require added focus, which have included: evolving state curriculum standards, student engagement and

retention, education technology, legal and policy matters, information security and succession planning. Our CEO also periodically presents to our Board on the strategic, financial and operational issues facing the Company, which frequently includes a review of associated risks and opportunities.

Management is responsible for identifying, prioritizing, remediating and monitoring the day-to-day management of risks that the Company faces and applying the Company's disclosure controls and procedures, while our Board, as a whole and through its committees, is responsible for the oversight of enterprise risk management. In fiscal 2025, the Audit Committee continued to work directly with a major independent accounting firm to support the Company's internal audit function in risk management. This combination provides us with the focus, scope, expertise, alignment and continuous attention necessary for effective risk management and disclosures.

While our Board is ultimately responsible for risk oversight, three of its committees concentrate on specific risk areas:

The Audit Committee oversees financial reporting and internal controls, school and corporate compliance, cybersecurity and operations risk and discusses with management the Company's policies with respect to those matters. Our internal audit department prepares risk management reports that are provided to the Audit Committee on a quarterly basis, or as needed. The Audit Committee receives regular reports from management, including the Chief Information Security Officer, on our cybersecurity risks. In addition, management updates the Committee on any cybersecurity incidents it considers to be significant or potentially significant. The Audit Committee reports to the full Board regarding its activities, including those related to cybersecurity. In addition, the Audit Committee assists the Board in the oversight of legal risk management.

A Legal Compliance and Ethics Committee (consisting of senior management members) maintains a Legal Compliance and Ethics Program, which includes a Chief Compliance Officer. The Legal Compliance and Ethics Committee provides reports to the Audit Committee on the Company's legal risks and compliance-related matters in the schools we serve and at the corporate level. Our Compensation Committee assists our Board in fulfilling its oversight responsibilities with respect to the management of risks arising from our compensation policies and programs and retains outside compensation and legal experts for that purpose.

Finally, our Nominating and Corporate Governance Committee assists our Board in fulfilling its oversight responsibilities with respect to the management of risks associated with the organization, membership and structure, or design, of the Board, succession planning and corporate governance. The Board committees may retain independent counsel, experts or advisors as provided for in their charters, and the Board as a whole has access to such advisors and such other independent advisors

that the Company retains or that the Board considers necessary to discharge its responsibilities, including in connection with risk oversight.

49.     The Proxies thus assured stockholders that the Director Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially foregoing false and misleading statements.

50.     As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

**F.     The Board Breached its Fiduciary Duties**

51.     As officers and/or directors of Stride, the Defendants owed Stride fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Stride in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Stride, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

52.     Defendants, because of their positions of control and authority as directors and/or officers of Stride, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Stride's financial condition, performance, growth, operations, financial statements, business, management, earnings,

internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

53.    To discharge their duties, the officers and directors of Stride were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Stride were required to, among other things:

(a)    Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b)    Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d)    Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or

practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f)     Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g)     Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

54.    The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

55.    The Board's Audit Committee is tasked with overseeing Stride's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Stride's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- assisting the Board with its oversight responsibilities regarding: (i) the integrity of the Company's financial statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the independent auditor's qualifications and independence; (iv) the performance of the Company's internal audit function and independent auditor; and (v) the Company's privacy and data security risk exposures.

- reviewing and discussing with management and the independent auditor: (a) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's

selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies; (b) any analyses prepared by management or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including analyses of the effects of alternative GAAP methods on the Company's financial statements; and (c) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements.

- discussing with management and the independent auditor the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies.

- discussing with management and the independent auditor any correspondence from or with regulators or governmental agencies, any employee complaints or any published reports that raise material issues regarding the Company's financial statements, financial reporting process, accounting policies or internal audit function.

- discussing with management and assess the Company's policies with respect to risk assessment and risk management. . . . The Committee shall also discuss with management the Company's significant financial risk exposures, and the actions management has taken to limit, monitor or control such exposures.

- establishing procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters. The Committee shall also establish procedures for the confidential and anonymous submission by employees regarding questionable accounting or auditing matters.

- reporting regularly to, and review with, the Board any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditor, the performance of the Company's internal audit function or any other matter the Committee determines is necessary or advisable to report to the Board.

56.    In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Fink, Knowling, Smith, and Verbrugge conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially

false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

57.     In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

58.     The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Stride.

## DERIVATIVE ALLEGATIONS

59.     Plaintiff brings this action derivatively in the right and for the benefit of Stride to redress injuries suffered by Stride as a direct result of the Director Defendants' breaches of fiduciary duty.  Stride is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

60.     Plaintiff will adequately and fairly represent the interests of Stride in enforcing and prosecuting the Company's rights.

61.    Plaintiff was a stockholder of Stride at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Stride stockholder.

## DEMAND FUTILITY ALLEGATIONS

62.    Plaintiff repeats, re-alleges, and incorporates by reference each and every allegations set forth as though fully set forth herein.

63.    The Stride Board currently has eight members.

64.    Plaintiff has not made any demand on Stride's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

### A.    Demand is Excused as to Defendant Rhyu

65.    Defendant Rhyu is the Company's CEO. Defendant Rhyu received compensation of $21,496,095 in 2025 and $15,623,124 in 2024. Defendant Rhyu depends on Stride for his income. In addition, Stride stated in the 2025 Proxy that Defendant Rhyu is not independent pursuant to SEC and NYSE rules.

66.    Defendant Rhyu served as a director of the Company during the Relevant Time Period. As a director, Defendant Rhyu had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Rhyu was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

67.    Defendant Rhyu failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By

consciously disregarding the duty to monitor Stride's controls, Defendant Rhyu failed to protect corporate assets.

68.     In addition, Defendant Rhyu is a named defendant in the Securities Class Action.

69.     Thus, Defendant Rhyu faces a substantial likelihood of liability.

**B.     Demand is Excused as to Defendant Alvarez**

70.     Defendant Alvarez served as a director of the Company during the Relevant Time Period. As a director, Defendant Alvarez had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Alvarez was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

71.     Defendant Alvarez failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Stride's controls, Defendant Alvarez failed to protect corporate assets.

72.     According to the 2025 Proxy, Defendant Alvarez received $329,592 in compensation in connection with her role as a Company director. Defendant Alvarez is not otherwise employed. Accordingly, Defendant Alvarez cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

**C.     Demand is Excused as to Defendant Fink**

73.     Defendant Fink served as a director of the Company during the Relevant Time Period. As a director, Defendant Fink had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations,

prospects, internal controls, and financial statements were accurate. Defendant Fink was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

74. Defendant Fink failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Stride's controls, Defendant Fink failed to protect corporate assets.

75. According to the 2025 Proxy, Defendant Fink received $393,261 in compensation in connection with his role as a Company director. Accordingly, Defendant Fink cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

76. Defendant Fink served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for discussing earnings releases and guidance with Stride's management, reviewing complaints concerning the Company's financial statements, and review the efficacy of Stride's internal controls. As a member of the Audit Committee, Defendant Fink was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's enrollment practices, compliance with local laws and regulations, and directives to preserve profit margins by denying services or deferring necessary hires. In addition, Defendant Fink knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Fink breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Fink faces a substantial likelihood of liability for these breaches, making any demand on Defendant Fink futile.

### D.  Demand is Excused as to Defendant Knowling

77.    Defendant Knowling served as a director of the Company during the Relevant Time Period. As a director, Defendant Knowling had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Knowling was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

78.    Defendant Knowling failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Stride's controls, Defendant Knowling failed to protect corporate assets.

79.    According to the 2025 Proxy, Defendant Knowling received $416,232 in compensation in connection with his role as a Company director. Accordingly, Defendant Knowling cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

80.    Defendant Knowling served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for discussing earnings releases and guidance with Stride's management, reviewing complaints concerning the Company's financial statements, and review the efficacy of Stride's internal controls. As a member of the Audit Committee, Defendant Knowling was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's enrollment practices, compliance with local laws and regulations, and directives to preserve profit margins by denying services or deferring necessary hires. In addition, Defendant Knowling knowingly or recklessly disregarded failures in the Company's internal

controls. Accordingly, Defendant Knowling breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Knowling faces a substantial likelihood of liability for these breaches, making any demand on Defendant Knowling futile.

**E.      Demand is Excused as to Defendant Lawernce**

81.      Defendant Lawrence served as a director of the Company during the Relevant Time Period. As a director, Defendant Lawrence had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Lawrence was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

82.      Defendant Lawrence failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Stride's controls, Defendant Lawrence failed to protect corporate assets.

83.      According to the 2025 Proxy, Defendant Lawrence received $329,592 in compensation in connection with her role as a Company director. Accordingly, Defendant Lawrence cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

**F.      Demand is Excused as to Defendant McFadden**

84.      Defendant McFadden served as a director of the Company during the Relevant Time Period. As a director, Defendant McFadden had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant

McFadden was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

85.     Defendant McFadden failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Stride's controls, Defendant McFadden failed to protect corporate assets.

86.     According to the 2025 Proxy, Defendant McFadden received $335,000 in compensation in connection with her role as a Company director. Accordingly, Defendant McFadden cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

### G.     Demand is Excused as to Defendant Smith

87.     Defendant Smith served as a director of the Company during the Relevant Time Period. As a director, Defendant Smith had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Smith was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

88.     Defendant Smith failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Stride's controls, Defendant Smith failed to protect corporate assets.

89.    According to the 2025 Proxy, Defendant Smith received $336,725 in compensation in connection with his role as a Company director. Accordingly, Defendant Smith cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

90.    Defendant Smith served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for discussing earnings releases and guidance with Stride's management, reviewing complaints concerning the Company's financial statements, and review the efficacy of Stride's internal controls. As a member of the Audit Committee, Defendant Smith was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's enrollment practices, compliance with local laws and regulations, and directives to preserve profit margins by denying services or deferring necessary hires. In addition, Defendant Smith knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Smith breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Smith faces a substantial likelihood of liability for these breaches, making any demand on Defendant Smith futile.

### H.    Demand is Excused as to Defendant Verbrugge

91.    Defendant Verbrugge served as a director of the Company during the Relevant Time Period. As a director, Defendant Verbrugge had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Verbrugge was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

92.     Defendant Verbrugge failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Stride's controls, Defendant Verbrugge failed to protect corporate assets.

93.     According to the 2025 Proxy, Defendant Verbrugge received $336,996 in compensation in connection with his role as a Company director. Defendant Verbrugge is not otherwise employed. Accordingly, Defendant Verbrugge cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

94.     Defendant Verbrugge served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for discussing earnings releases and guidance with Stride's management, reviewing complaints concerning the Company's financial statements, and review the efficacy of Stride's internal controls. As a member of the Audit Committee, Defendant Verbrugge was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's enrollment practices, compliance with local laws and regulations, and directives to preserve profit margins by denying services or deferring necessary hires. In addition, Defendant Verbrugge knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Verbrugge breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Verbrugge faces a substantial likelihood of liability for these breaches, making any demand on Defendant Verbrugge futile.

95.     Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

### COUNT I

### Breach of Fiduciary Duty
### (Derivatively Against The Director Defendants)

96.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

97.     Each of the Defendants owed and owes Stride the highest obligations of loyalty, good faith, due care, and oversight.

98.     Each of the Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

99.     The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

100.    In addition, the Director Defendants further breached their fiduciary duties owed to Stride by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that Stride was: (1) inflating enrollment numbers; (2) cutting staff costs beyond required statutory limits; (3) ignoring compliance requirements; and (4) losing existing and potential student enrollments.

101.    The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

102.     The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

103.     As a direct and proximate result of the breaches of duty alleged herein, Stride has sustained and will sustain significant damages.

104.     As a result of the misconduct alleged herein, these Defendants are liable to the Company.

105.     Plaintiff, on behalf of Stride, has no adequate remedy at law.

## COUNT II

### Breach of Fiduciary Duty
### (Derivatively Against the Officer Defendants)

106.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

107.     The Officer Defendants are executive officers of the Company. As executive officers, The Officer Defendants owed and owe Stride the highest obligations of loyalty, good faith, due care, oversight, and candor.

108.     The Officer Defendants breached their fiduciary duties owed to Stride by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose Stride was: (1) inflating enrollment numbers; (2) cutting staff costs beyond required statutory limits; (3) ignoring compliance requirements; and (4) losing existing and potential student enrollments.

109.     The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

110.     As a direct and proximate result of the breaches of duty alleged herein, Stride has sustained and will sustain significant damages.

111.     As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

112.     Plaintiff, on behalf of Stride, has no adequate remedy at law.

**COUNT III**

**Gross Mismanagement**
**(Against All Defendants)**

113.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

114.     By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation

115.     As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages.

116.    As a direct and proximate result of the gross mismanagement and breaches of duty alleged herein, Stride has sustained and will sustain significant damages.

117.    As a result of the misconduct alleged herein, the Defendants are liable to the Company.

118.    Plaintiff, on behalf of Stride, has no adequate remedy at law.

<u>**COUNT IV**</u>

<u>**Waste of Corporate Assets**</u>
<u>**(Derivatively Against All Defendants)**</u>

119.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

120.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Time Period. It resulted in continuous, connected, and ongoing harm to the Company.

121.    As a result of the misconduct described above, the Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

122.    As a direct and proximate result of the waste of corporate assets and breaches of duty alleged herein, Stride has sustained significant damages.

123.    As a result of the misconduct alleged herein, the Defendants are liable to the Company.

124.    Plaintiff, on behalf of Stride, has no adequate remedy at law.

## COUNT V

### Unjust Enrichment
### (Derivatively Against the Officer Defendants)

125.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

126.     By their wrongful acts, violations of law, and false or misleading statements or omissions of material fact that they caused to be made, the Defendants were unjustly enriched at the expense of, and the detriment of, the Company.

127.     The Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price, or received compensation or other payments that were unjust in light of the Defendants' bad faith conduct.

128.     Plaintiff, on behalf of Stride, seeks restitution from the Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation based compensation, obtained by the Defendants due to their wrongful conduct and breach of their fiduciary duties.

## COUNT VI

### Violation of Section 14(a) of the Exchange Act
### (Against The Director Defendants)

129.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

130.     The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege

and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

131.    The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the False Proxies. In the False Proxies, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

132.    The False Proxies, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Stride misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

133.    Plaintiff, on behalf of Stride, thereby seeks relief for damages inflicted upon the Company based upon the misleading False Proxies in connection with the improper reelection of the Director Defendants to the Board.

<b><u>RELIEF REQUESTED</u></b>

WHEREFORE, Plaintiff demands judgment as follows:

A.      Declaring that Plaintiff may maintain this derivative action on behalf of Stride and that Plaintiff is a proper and adequate representative of the Company;

B.      Against all of the Defendants and in favor of Stride for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C.        Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D.        Awarding Stride restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E.        Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.        Granting such other and further equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: December 1, 2025                **SUTTER & TERPAK, PLLC**

/s/
Matthew T. Sutter
7540 Little River Turnpike, Suite A
Annandale, Virginia 22003
Phone: (703) 256-1800
Fax: (703) 991-6116
Email: matt@sutterandterpak.com


**ROWLEY LAW PLLC**
Shane T. Rowley, Esq.
Danielle Rowland Lindahl, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
          drl@rowleylawpllc.com